**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 21-cr-332-PLF-1** |
| | : | |
| **PAUL RUSSELL JOHNSON** | : | |
| | : | |
| **and** | : | |
| | : | |
| **STEPHEN CHASE RANDOLPH,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT PAUL RUSSELL JOHNSON'S
"MOTION TO SEVER AND PRELIMINARY RESPONSE TO GOVERNMENT'S
SEPTEMBER 22, 2021 FILING REGARDING THE SPEEDY TRIAL ACT"**

The United States files this opposition to defendant Paul Russell Johnson's "Motion to Sever and Preliminary Response to Government's September 22, 2021 Filing Regarding the Speedy Trial Act."  ECF No. 43.  For the reasons set forth below, the Court should deny the defendant's severance motion and exclude time under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(6) and (h)(7).

**FACTUAL BACKGROUND**

Paul Russell Johnson ("Johnson") and Stephen Chase Randolph ("Randolph") jointly and unlawfully entered the restricted grounds of the United States Capitol on January 6, 2021, then jointly, with their fellow rioters, toppled a police barricade, causing a police officer to fall backwards and suffer a concussion.  Because the same evidence established their individual crimes, the grand jury jointly indicted them for

- one count of civil disorder, in violation of 18 U.S.C. § 231(a)(3);

- one count of obstructing an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2;

- one count of assaulting, resisting, or impeding a federal officer using a dangerous weapon and inflicting bodily injury, in violation of 18 U.S.C. § 111(a)(1), (b) and 2;

- one count of entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1), (b)(1)(A);

- one count of disorderly and disruptive conduct within the Capitol grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2), (b)(1)(A);

- one count of engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, resulting in significant bodily injury, in violation of 18 U.S.C. § 1752(a)(4), (b)(1)(A), (b)(1)(B), and 2;

- and two misdemeanor offenses under 40 U.S.C. § 5104(e)(2).

ECF No. 15.  Randolph alone is charged with an additional count of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1).  *Id.*

Johnson and Randolph were among a crowd of rioters who worked together to push a set of heavy, interlocking metal crowd control barricades into a line of U.S. Capitol Police ("USCP") Officers, causing USCP Officer C.E. to fall backward, hit the stairs behind her, and suffer a concussion.  Once Officer C.E. was knocked down, Randolph climbed over the metal barricade and began attacking USCP Officer D.C.  As Randolph attacked Officer D.C., Johnson continued pushing the metal barricades to the ground so that the rioters standing behind him could more easily trample over the barricades and advance forward toward the U.S. Capitol Building.[1]

---

[1] The government's opposition to Johnson's motion to modify his conditions of release contains a detailed recitation of his alleged conduct.  ECF No. 34, at 2-15.  The government's

The assaults of Officer C.E. and Officer D.C. occurred within seconds of one another and are depicted in the same open-source videos from January 6, 2021.  Both Johnson and Randolph are plainly visible in these open-source videos – before, during, and after each assault.  While Randolph cannot be heard in any of these videos, Johnson can be seen and heard shouting (through a megaphone): "Where ya at?  Where's it at?  Get on the front line.  1776 this fence right here.  You think George Washington would be standing behind this motherf**er."  Johnson can also be heard shouting, "Let's go!  F*** this sh*t.  We pay your bills, you back the f*** off," as he approaches the line of USCP officers.[2]

## APPLICABLE AUTHORITY

In cases with multiple defendants, the "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses." *United States v. Wilson*, 26 F.3d 142, 153 n.4 (D.C. Cir. 1994) (citations omitted); *see also United States v. Perry*, 731 F.2d 985, 989 (D.C. Cir. 1984); *United States v. Jackson*, 562 F.2d 789, 793-94 (D.C. Cir. 1977).  Rule 8(b) permits joinder of defendants "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  This circuit construes Rule 8(b) broadly in favor of joinder.  *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]his circuit's law makes it difficult to prevail on a claim that there has been a misjoinder under Rule 8(b).").

---

opposition to Randolph's motion to revoke his detention order provides that same.  ECF No. 27, at 3-8.

[2] The government's opposition to Johnson's motion to modify his conditions of release contains a detailed recitation of his alleged conduct.  ECF No. 34, at 2-15.  The government's opposition to Randolph's motion to revoke his detention order provides that same.  ECF No. 27, at 3-8.

Motions for severance of properly joined defendants should be granted only where the dominant public interest in joint trials is outweighed by substantial prejudice arising from case-specific problems. *See United States v. Tucker*, --- F.4th ---, No. 19-3042, 2021 WL 3950864, at *12 (D.C. Cir. Sept. 3, 2021) (per curiam) ("Joint trials are preferred in federal criminal cases because they 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993))). "The preference for joint trials is especially strong when the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged, *inter alia*, with participating in the same illegal acts." *Id.* at *12 (internal quotation marks and citation omitted).

Pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The Supreme Court defines prejudice as "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The D.C. Circuit has identified certain reasons why a defendant may be prejudiced by joinder, including: (1) the defendant's embarrassment or confoundment in presenting separate defenses, (2) the jury's possible use of the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant, from which is found his guilt of the other crime or crimes charged, or (3) the jury's possible accumulation of the evidence of various crimes charged to find guilt when, if considered separately, the jury would not so find. *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964).

Even if prejudice is shown, the "permissive language of [Rule 14] makes clear that severance is not required." *Tucker*, 2021 WL 3950864, at \*12. Instead, Rule 14 grants a district court "'significant flexibility to determine how to remedy any potential risk of prejudice posed by joinder of multiple defendants in a single trial.'" *Id.* (quoting *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011) (per curiam)). Thus, "even in cases where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539). "The defendant carries the burden of demonstrating prejudice resulting from a failure to sever." *United States v. Gooch*, 665 F.3d 1318, 1326 (D.C. Cir. 2012)

In light of these principles, "severance is the exception rather than the rule," and "motions to sever should be granted 'sparingly.'" *Tucker*, 2021 WL 3950864, at \*12 (quoting *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (per curiam)).

## ARGUMENT

### I.   Joinder of the charges against these codefendants does not unfairly prejudice Johnson.

Johnson does not allege that he was improperly joined with Randolph under Rule 8. Thus, the only issue before this Court is whether a joint trial would either compromise a specific trial right of Johnson's or prevent the jury from making a reliable judgment about Johnson's guilt or innocence. Johnson's Sixth Amendment right to a speedy trial has not been compromised by his joinder with Randolph. Nor has Johnson demonstrated substantial trial prejudice to warrant severance under Rule 14. To the extent there is any prejudice to Johnson as a result of his joinder with Randolph, a limiting instruction would sufficiently reduce any potential prejudice from the additional count in which Johnson is not charged.

**A. Denial of Johnson's severance motion will not result in a violation of his Sixth Amendment right to a speedy trial.**

Johnson first contends that severance is necessary to preserve his Sixth Amendment right to a speedy trial.  (Dkt. 43, at 5-6).  This argument is without merit because there has been no violation of Johnson's speedy trial right under the Speedy Trial Act, much less his speedy trial right under the Sixth Amendment.  Thus, Johnson cannot claim that a joint trial will compromise his right to a speedy trial.

While the absence of a Speedy Trial Act violation "does not *ipso facto* defeat a Sixth Amendment speedy trial claim," it is an "unusual case in which the [Speedy Trial] Act is followed but the Constitution violated."  *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014) (internal quotation marks omitted).  In assessing whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'"  *Id.* (alteration in original) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Under the first factor, which "is to some extent a triggering mechanism," *Barker*, 407 U.S. at 530, a defendant must make a threshold showing that the delay between the accusation and the trial was presumptively prejudicial, as "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness," *Doggett v. United States*, 505 U.S. 647, 652 (1992).  Without such a showing of presumptive prejudice, there is "no necessity for inquiry into the other factors."  *Barker*, 407 U.S. at 530.

Given that less than six months have elapsed between the defendant's arrest and the present, the defendant cannot yet establish that the length of delay triggers a review of the other *Barker* factors.  *See Doggett*, 505 U.S. at 652 n.1 ("[P]ostaccusation delay [is] presumptively

6

prejudicial at least as it approaches one year.") (internal quotation marks omitted); *see also United States v. Ford*, 155 F. Supp. 3d 60, 69 ("Sanders's seven-month delay and Hager's nine-month delay do not violate the Sixth Amendment right to a speedy trial.").

Moreover, whether a delay is presumptively prejudicial depends upon the "peculiar circumstances of the case," and therefore requires judicial findings. *Barker*, 407 U.S. at 530-31; *see also United States v. Marshall*, 669 F.3d 288, 295-96 (D.C. Cir. 2011) (requiring the district court to make factual findings regarding defendant's allegation that the government did not overcome the presumption of prejudice for delays over one year).

The defendant cannot show, and this Court should not find, that the government is not "prosecut[ing] his case with customary promptness," *see Doggett*, 505 U.S. at 652, given the government's diligent efforts to address unprecedentedly complex discovery issues.[3]  *See* ECF No. 40.  Even in cases involving detained defendants with substantially longer periods of pre-trial delay, the D.C. Circuit has found no violation of the Sixth Amendment speedy trial guarantee.  *See, e.g.*, *Rice*, 746 F.3d at 1082 ("[A]lthough Rice suffered lengthy [twenty-six month] 'pretrial incarceration' and 'anxiety and concern,' he does not even attempt to argue that he suffered 'the most serious' form of prejudice: the impairment of his defense." (quoting *Barker*, 407 U.S. at 532)); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (three-and-one-half years of pretrial delay did not violate the Sixth Amendment).  In *United States v. Taylor*, No. 18-198 (JEB), 2020 WL 7264070 (D.D.C. Dec. 10, 2020), Judge Boasberg recently denied a defendant's motion to dismiss for a speedy trial violation, finding that his Sixth Amendment right

---

[3] Even assuming, *arguendo*, that the length of the delay gives rise to a "presumption of prejudice," the presumption is rebuttable, and the threshold requirement—the length of the delay—is only "one factor among several." *Doggett*, 505 U.S. at 652.  As explained below, defendant has not attempted to show the kind of actual prejudice that would establish a Sixth Amendment violation.

had not been infringed notwithstanding the fact that the defendant had at that point been detained pending trial for 28 months.

The second and third *Barker* factors—the reason for the delay and the defendant's assertion of his right to a speedy trial—also cut against Johnson.  Only 172 days will have elapsed between the filing of the indictment (April 30, 2021) and the last date of excludable time for Johnson under the Speedy Trial Act (October 19, 2021).[4]  Johnson did not invoke his right to a speedy trial until the status conference on July 27.  Up until July 27, Johnson had affirmatively waived time under the Speedy Trial Act.  Johnson and his co-defendant, Randolph, had also filed three motions that automatically tolled the Speedy Trial clock under 18 U.S.C. § 3161(h)(1)(D) and (h)(6).[5]  On July 27, the Court excluded time over Johnson's objection in the interest of justice between July 27 and September 23.  As the Court subsequently explained in its Memorandum Opinion and Order (ECF No. 37), "it is in the interests of justice as to both defendants to exclude a period of approximately 60 days," so that the defendants "'can review the materials being produced by the Government, and both sides can engage in meaningful plea discussions.'"  ECF No. 37, at 2-3 (emphasis in original) (quoting *United States v. Speight*, 941 F. Supp. 2d 115, 118 (D.D.C. 2013)).  The Court also excluded the time between July 27 and September 23 with respect to Johnson under 18 U.S.C. § 3161(h)(6), finding that because Johnson was still joined with his co-defendant Randolph, "'reasonable exclusions of time for [Mr. Randolph] . . . will likewise delay [Mr. Johnson's]

---

[4] Only five days—between May 5 and May 11—have not been excluded under the Speedy Trial Act.

[5] On May 21, Randolph filed a "Motion to Revoke Detention Order" (ECF No. 24), which was resolved on June 16.  On June 7, Johnson filed a "Consent Motion to Modify Conditions of Release" (ECF No. 30), which was resolved on June 8 (ECF No. 31).  And on July 16, Johnson filed a second "Motion to Modify Conditions of Release" (ECF No. 33), which was resolved on July 27.

speedy-trial clock.'"  *Id.* at 3 (quoting *Speight*, 941 F. Supp. 2d at 118-19).   On September 23, Johnson filed the instant motion to sever.   In sum, while 57 days have been excluded over the defendant's objection, those days were excluded by the Court in the interest of justice and pursuant to 18 U.S.C. § 3161(h)(6), and Johnson "did not connect that interest to his severance argument" until he filed the instant motion on September 23.  *Ford*, 155 F. Supp. 3d at 69.

Finally, with respect to the fourth *Barker* factor, prejudice, defendant complains about "anxiety" caused by damage to his reputation because of the pending charges and "finances."  ECF No. 43, at 6.  He does not contend, much less demonstrate, that any delay has impeded his ability to prepare his defense, which is the primary "prejudice" that the speedy trial right seeks to avoid. *See Barker*, 407 U.S. at 532 (the "most serious" form of prejudice arising from delay is "the possibility that the defense will be impaired").  Because Johnson "offers no explanation of how the delay impaired [his] defense," he "fails to show that [his] Sixth Amendment right to a speedy trial was violated." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019); *see also Mitchell v. United States*, 841 F. Supp. 2d 322, 330 (D.D.C. 2012) (no *Barker* prejudice where defendant did not allege "witness disappearance or death and the inability of a witness to recall events accurately due to the passage of time").  That's because "the defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay." *United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992); *see also United States v. Omran*, 641 F. App'x 427, 429 (5th Cir. 2016) (per curiam) (unpublished) (defendant's "vague and conclusory assertions are insufficient to show the extreme prejudice or willfulness by the prosecution to delay his trial which would require an examination of the *Barker* factors").

"[A] defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with 'reasonable diligence,' and the defendant fails to show that the delay resulted in 'specific prejudice to his defense." *United States v. Parga-Rivas*, 689 F. Supp. 2d 25, 29 (D.D.C. 2009) (quoting *Doggett*, 505 U.S. at 656); *see also Barker*, 407 U.S. at 522 (rejecting a rigid rule because of the "unsatisfactorily severe remedy of dismissal of the indictment").  This Court should hold that no Sixth Amendment violation has occurred.

### B.  There is minimal danger of spillover prejudice in this case, and any potential prejudice can be cured with jury instructions.

Johnson also argues that there is a serious risk of spillover prejudice because of an alleged disparity in evidence between himself and Randolph.  ECF No. 43, at 6-8.  Johnson's argument fails for at least four reasons.

First, there is no "dramatic disparity" of evidence between Johnson and Randolph.  *See United States v. Slade*, 627 F.2d 293, 309 (D.C. Cir. 1980).  Put simply, this is not a case where the government's evidence against Randolph is "far more damaging" than the evidence against Johnson.  *United States v. Bruner*, 657 F.2d 1278, 1290 (D.C. Cir. 1981) (internal quotation marks and citation omitted).  As explained above, there is substantial—if not complete—overlap in the evidence against both defendants.  The open-source videos that depict the defendants' joint assault of Officer C.E. also depict Randolph's separate assault of Officer D.C. just a few seconds later. Any percipient witness that the government would call to prove Randolph's assault of Officer D.C. would also necessarily have witnessed and/or been present for the violent actions resulting in Officer C.E.'s concussion.  Moreover, Randolph's *post hoc* statements about the events of January 6 being "f***ing fun," ECF No. 43, at 7, even if only admissible against Randolph, are not likely to inflame the jury more than Johnson's contemporaneous statements on January 6 telling officers

10

to "back the f*** off" and explaining that he wanted to "1776 this fence right here."  And to the extent Randolph's statement is damaging to Johnson, a limiting instruction would alleviate any potential spillover prejudice.

Second, because the defendants' words and actions are recorded in open-source videos, the jury has "'no need to look beyond each defendant's own words [and conduct] in order to convict.'" *United States v. Gaviria*, 116 F.3d 1498, 1533 (D.C. Cir. 1997) (per curiam) (quoting *United States v. Anderson*, 39 F.3d 331, 348 (D.C. Cir. 1994)).  These open-source videos thereby minimize the risk that the jury will not be able to compartmentalize the evidence against each defendant in this case.  *See Celis*, 608 F.3d at 846 ("'[T]he danger of spillover prejudice is minimal when the Government presents tape recordings of individual defendants.'") (quoting *Gaviria*, 116 F.3d at 1533).

Third, there is minimal risk of jury confusion where only two defendants are charged in the indictment.  *See United States v. Mathis*, 216 F.3d 18, 25 (D.C. Cir. 2000) ("[T]he risk of spillover prejudice is less likely the fewer the defendants.") (cleaned up); *Gaviria*, 116 F.3d at 1533 (no risk of prejudice with four charged defendants); *Anderson*, 39 F.3d at 348 (no risk of prejudice with ten charged defendants).   Relatedly, there is minimal risk that the jury will use evidence of Randolph's guilt against Johnson because Johnson is not charged with assaulting Officer D.C.

Finally, even assuming, *arguendo*, that there are some disparities in evidence between Johnson and Randolph, "any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant." *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011) (per curiam) (citation omitted).  "*[S]ome* disparity in evidence does not compel severance," especially where the government presents "substantial and independent evidence of

each defendant's significant involvement" in the charged conduct. *Id.* at 95-96 (emphasis added) (quoting *United States v. Tarantino*, 846 F.2d 1384, 1399 (D.C. Cir. 1988)).  Given the substantial and compelling evidence of guilt against each defendant, a jury instruction which explains that each defendant's guilt must be considered individually based upon the evidence that pertained to him will cure any potential spillover prejudice. *Ford*, 155 F. Supp. 3d at 70.

## II. Excluding time under the Speedy Trial Act is justified under 18 U.S.C. § 3161(h)(7) and reasonable under 18 U.S.C. § 3161(h)(6).

As set forth in the government's Response to the Court's Inquiry Regarding Application of the Speedy Trial Act (hereinafter "September 22 Response"), ECF No. 42, which the government incorporates herein by reference, several considerations support tolling of the Speedy Trial Act period in this proceeding notwithstanding Johnson's objection and request for a trial date. The government will not reiterate the arguments made in its September 22 Response, except to explain why an exclusion of time under § 3161(h)(6) is reasonable with respect to Johnson.

The Speedy Trial Act excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  18 U.S.C. § 3161(h)(6).  As this Court previously noted, this provision means that "an exclusion applicable to one defendant applies to all codefendants."  *United States v. Edwards,* 627 F.2d 460, 461 (D.C. Cir. 1980) (per curiam); *see also United States v. Van Smith*, 530 F.3d 967, 970 (D.C. Cir. 2008) ("The Act also excludes delay caused by a co-defendant's pretrial proceedings."); *Speight*, 941 F. Supp. 2d at 118 ("As long as he is joined to his co-Defendants, reasonable exclusions of time for the others . . . will likewise delay Speight's speedy-trial clock.").

Johnson does not dispute that an exclusion applicable to Randolph also applies to him under § 3161(h)(6).  Instead, citing *United States v. Darby*, 744 F.2d 1508 (11th Cir. 1984), he

contends any excludable delay imputed to him under § 3161(h)(6) would not be "reasonable." 18 U.S.C. § 3161(h)(6).

The excludable delay imputed to Johnson as a result of § 3161(h)(6) is reasonable, especially when viewed in light of the strong preference for joint trials and preserving scarce judicial resources. *See, e.g.*, *United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998) ("The utility of a joint trial is particularly compelling . . . [when] the government could be expected to recite a single factual history, put on a single array of evidence, and call a single group of witnesses.") (internal quotation marks and citation omitted); *United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990) (same). As the legislative history of the Speedy Trial Act confirms, Congress intended that § 3161(h)(6) be liberally construed to promote judicial efficiency and avoid the inefficient use of prosecutorial and judicial resources:

> The Senate Report states that "[t]he purpose of [§ 3161(h)(6)] is to make sure that [the Act] does not alter the present rules on severance of codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under Section 3161." S. Rep. No. 1021, 93d Cong., 2d Sess. 38 (1974). Congress clearly intended that, where appropriate, joint trials of defendants should continue to be available as a means of promoting judicial efficiency by avoiding duplicative proof at successive trials. It thus intended that reasonable speedy trial time be excluded under Section 3161(h)([6]) when necessary to enable joint trials to go forward.

*United States v. Pena*, 793 F.2d 486, 489-90 (2d Cir. 1986) (first and third alterations in original); *United States v. Novak*, 715 F.2d 810, 814 (3d Cir. 1983) ("The legislative history of section 3161(h)([6]) illustrates a strong congressional preference for joint trials and an intention that delays resulting from the joinder of codefendants be liberally excluded."); *United States v. Garrett*, 720 F.2d 705, 708-09 (D.C. Cir. 1983) ("Congress was concerned about the Speedy Trial Act's impact on government efforts to prosecute multidefendant cases. The exclusion in section 3161(h)([6])

13

addressed this concern and was intended to avoid forcing the government to seek severance in a multidefendant trial due solely to the Act's time limitations.").

Moreover, there is no prejudice to the defendant as a result of excluding time under § 3161(h)(6). *See Darby*, 744 F.2d at 1519 (reasonableness of delay under § 3161(h)(6) may be judged "in terms of prejudice to the defendant"). "With respect to the prejudice analysis, relevant considerations include whether the delay impaired the [defendant's] ability to defend himself or resulted in excessive pretrial incarceration." *United States v. Stephens*, 489 F.3d 647, 654 (5th Cir. 2007) (quoting *United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998)).

Johnson has suffered neither form of prejudice. First, he is not detained. *See United States v. Vogl*, 374 F.3d 976, 984 (10th Cir. 2004) (defendant's pretrial release was "an 'important' [fact] weighing in favor of finding a 'reasonable' delay under subsection (h)([6]")) (quoting *Tranakos*, 911 F.2d at 1426). Second, as explained above, Johnson has not alleged any impairment of his ability to prepare a defense. Johnson's "soul-crushing anxiety" of "being caged in the Age of Mass Incarceration" and the reputational harm he has allegedly suffered after being publicly charged for his conduct on January 6, *see* ECF No. 43, do not hamper or otherwise prejudice his ability to prepare a defense.

Defense counsel's statements at the most recent status conference, and the demands made in a September 10, 2021 discovery letter, underscore why excluding time under both § 3161(h)(6) and § 3161(h)(7) is reasonable and justified. He continues to make exhaustive Rule 16 discovery and *Brady* requests that implicate the full body of Capitol Breach materials in the government's possession. At the last status conference before this Court, defense counsel confirmed that his client was "never going to waive *Brady*." ECF No. 45, at 7. When asked whether he would want to go to trial on the current state of discovery, defense counsel hedged, saying "I would go to trial,

and if the government would continue to try to get discovery to us, I think that would be a workable solution." In his September 10, 2021 discovery letter, however, defense counsel made clear that he is demanding "all photographs, videos, audio recordings, or any other type of recordings taken in connection to this case," including "the video footage from all interviews and officer interactions with Mr. Johnson," as well as "any photographs, video footage, or recorded communications, including radio run communications, within the possession, custody, or control of the government that are material to preparing Mr. Johnson's defense." He stated that "all photographs or video footage obtained or confiscated by the government from outside sources during the investigation of this case are material to the defense's preparation."

//

//

//

As the government previously explained regarding the enormous amount of information that it must review in order to discharge its disclosure obligations, defendant's dual demands for full discovery and a short trial date are not compatible.  Given defendant's unwillingness to forego further discovery and his wide-ranging discovery demands that implicate the full universe of Capitol Breach materials in the government's possession, an ends-of-justice continuance under § 3161(h)(7) is warranted to allow time for the government to complete its discovery plan, including populating its Relativity and evidence.com databases, and making productions to the defense's equivalent databases.  And because there is no prejudice to the defendant from this continuance, this Court should also find that excluding time until December 1, 2021—as the Court has already excluded with respect to Randolph—is reasonable under § 3161(h)(6).

Respectfully submitted,

CHANNING PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

*/s/ Hava Mirell*
HAVA MIRELL
Assistant United States Attorney, Detailee
CA Bar No. 311098
555 Fourth Street, N.W.
Washington, DC 20530
(213) 894-0717
Hava.Mirell@usdoj.gov

**<u>Certificate of Service</u>**

I hereby certify that on October 8, 2021, I caused a copy of the foregoing memorandum to be served on counsel of record via electronic filing.

_/s/ Hava Mirell_
HAVA MIRELL
Assistant United States Attorney