UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-537-3 (JMC) |
| | : | |
| PAUL RUSSELL JOHNSON, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO MODIFY CONDITIONS OF RELEASE**

"Let's go!" "We pay your bills." "Fuck this shit." are only a few of the things Defendant Johnson shouted through a megaphone at law enforcement on January 6, 2021, before he and co-defendants utilized a metal barricade to knock over Officer C.E.[1] The concussion Defendant Johnson and others inflicted upon Officer C.E. caused him/her to miss months of work, suffer from bouts of fainting, and lose his/her personal and professional dignity and normalcy.[2] Defendant Johnson expressed no remorse for his actions and, in fact, on the evening of January 6, 2021, he bragged on video about his criminal conduct stating that there were "a lot of cops … we started pulling the gates apart … we started bum rushing … we're fighting cops … I have video where I'm slinging one around…."

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, opposes Defendant Johnson's Motion to Modify Release Conditions, and respectfully urges the Court to deny the motion. Defendant Johnson no longer wishes to submit to location monitoring as part of his pre-trial release conditions. This condition is the

---

[1] Officer C.E. is the victim of Count Two of the Indictment filed on January 13, 2022. (ECF No. 80.)
[2] The entirety of Officer C.E.'s victim statement can be found in the June 4, 2021, transcript of co-defendant Samsel's detention hearing. (ECF No. 27 at pp. 9-10.)

least restrictive condition required to reasonably assure Defendant Johnson's appearance at court proceedings and the safety of others and the community. Therefore, Defendant Johnson's motion should be denied.

### I. Background

The gravity of what occurred at the U.S. Capitol on January 6, 2021, cannot be overstated. *United States v. Sabol*, No. 21-cr-35-EGS (D.D.C. April 14, 2021), Memorandum Opinion at 27, citing *United States v. Munchel*, No. 21-3010, 2021 WL 1149196 at 4 (D.C. Cir. March 26, 2021). "This was a singular and chilling event in U.S. history, raising legitimate concern about the security—not only of the Capitol building—but of our democracy itself." *Id.*, citing *United States v. Cua*, No. 21-107 (RDM), 2021 WL 918255, at 3 (D.D.C. Mar. 10, 2021).

On or about January 6, 2021, Defendant Johnson traveled from his home in Lanexa, Virginia to Washington, D.C.[3] As set forth in greater detail in the Statement of Facts and the government's July 2021 opposition to modification of release conditions, both incorporated herein, once in the District of Columbia, Defendant Johnson approached a line of metal barricades (utilized in this instance as a deadly or dangerous weapon) marked, "Area Closed;" shouted profanities at U.S. Capitol Police through a megaphone; Johnson, co-defendants, and others pushed and pulled on the barricade; Defendant Johnson and others knocked over U.S. Capitol Police Officer C.E., causing his/her head to hit the stairs behind him/her, resulting in a loss of consciousness, and later that day to black out and collapse, requiring transport to the emergency room where s/he was diagnosed with a concussion; after dismantling and knocking over the line of metal barricades, Defendant Johnson ran towards the U.S. Capitol Building,

---

3 Approximately 134 miles from Defendant Johnson's residence to the U.S. Capitol Building.

further into the restricted grounds; and encouraged other rioters with shouts of "Let's go!" and "Raise your voices. They're [unintelligible] because they're scared now."

For his conduct at the U.S. Capitol on January 6, 2021, Defendant Johnson is before the Court charged in a criminal indictment with several offenses, including:  Civil Disorder, in violation of Title 18, United States Code, § 231(a)(3); two distinct counts of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of Title 18, United States Code, § 111(a)(1) and (b); Entering and Remaining in a Restricted Building with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, § 1752(a)(1) and (b)(1)(A); Disorderly and Disruptive Conduct in a Restricted Building with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, § 1752(a)(2) and (b)(1)(A); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon Resulting in Significant Bodily Injury, and Aiding an Abetting, in violation of Title 18, United States Code, § 1752(a)(4), (b)(1)(A), (b)(1)(B), and (2); Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, § 5104(e)(2)(D); Act of Physical Violence in the Capitol Grounds or Buildings, in violation of Title 40, United States Code, § 5104(e)(2)(F); and Obstruction of an Official Proceeding, in violation of Title 18, United States Code §§ 1512(c)(2), 2 (ECF No. 80[4]).

Upon his arrest on April 13, 2021, Defendant Johnson was initially detained by the judge who conducted the initial appearance in the Eastern District of Virginia.  Once in the District of Columbia, Magistrate Judge Harvey imposed conditions pursuant to the High Intensity Supervision Program on Defendant Johnson, in May 2021.  Subsequently, in June 2021, the

---

4 Defendant Johnson was initially charged in 21-cr-332 (ECF Nos. 15 and 61).

parties agreed to modify release conditions, and District Court Judge Paul L. Friedman allowed Defendant Johnson to submit to location monitoring utilizing the SmartLINK program, as well as to move about freely on his 14-acre property.   A month later, Defendant Johnson wanted his pre-trial release conditions to be relaxed even further, requesting the conditions of home detention and location monitoring be removed, because SmartLINK was more burdensome that the ankle monitor.   (ECF No. 33.)   Based on Defendant Johnson's serious and felonious criminal conduct on January 6, 2021, and the weight of the evidence against him, the government opposed that motion, filing a response on July 23, 2021.   (ECF No. 34.)   That response addressed the factual and procedural background of this case, as well as the nature and circumstances or the offense, including the *Chrestman* factors; the weight of the evidence; history and characteristics of Defendant Johnson; and the nature and seriousness of danger. That response, in its entirety is incorporated here.   District Court Judge Paul L. Friedman denied Defendant Johnson's motion to modify release conditions on July 27, 2021.[5]

Defendant Johnson   again requests this Court to remove the location monitoring condition.   (ECF No. 144.)   The predominant fact the Defendant Johnson cites in his favor for this modification is that Defendant Johnson has remained compliant with his pre-trial release conditions.   Defendant also cites now, as he did in July 2021, the purported inconvenience of location monitoring, specifically the interference of this device with his work attire.   The

---

5 In light of this ruling, Defendant Johnson's demand for *de novo* review appears to be misplaced.   He has received such review of the magistrate judge's original release order; with the instant motion, the defendant effectively seeks reconsideration of Judge Friedman's prior order.   He has not, however, provided grounds for reconsideration.   *See, e.g., United States v. Cabrera*, 669 F.Supp.2d 35, 40 41 (D.D.C. 2010)(applying standards set forth in Fed.R.Civ.P. 59(e) that include an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice); *United States v. Sunia*, 643 F.Supp.2d 51, 61 (D.D.C. 2009)(where litigants have once battled for the Court's decision, they should neither be required, nor without good reason permitted, to battle for it again)(internal quotation marks and citations omitted).

government urges this Court to follow Judge Friedman's ruling and deny Defendant Johnson's motion to further relax his conditions of release.

**II.     Law**

Review of a release order is permitted when imposed by a magistrate judge or by a person other than the judge of a court having original jurisdiction over the offense.   18 U.S.C. § 3145(a)(2).

The Court is permitted to amend the order setting a defendant's conditions of release to impose additional or different conditions, but the Court must ensure that the conditions imposed are the least restrictive conditions that will reasonably assure his appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(c)(1)(B), (c)(3).

Compliance - even model compliance - with the Court's requirements is not enough to warrant adjustment of a defendant's pretrial release conditions.   *United States v. Henry*, 314 F. Supp. 3d 130, 133 (D.D.C. 2018).

**III.     Argument**

The government opposes any modification to Defendant Johnson's release conditions. As an initial matter, Defendant Johnson may not be entitled to a modification of his release, since the release conditions were imposed by the judge of a court having original jurisdiction over the offense.   Assuming arguendo that Defendant Johnson is entitled to a review of his pre-trial conditions, the current conditions allow Defendant Johnson to work, care for himself and family, attend religious services, and take his children to/from football practices/games nearly daily. Defendant Johnson argues that his compliance with the terms of his release indicate that he

should no longer need to submit to those conditions.   However, compliance is expected; compliance should not be the reason conditions are no longer necessary.

Defendant Johnson asserts that wearing a location monitoring device interferes with his ability to wear boots and shin pads required for his performance of tree-trimming duties. Discussions with pre-trial services Officers Sidbury (from the District of Columbia) and Smith (from the Eastern District of Virginia) do not bear this out.   Both officers indicated to the parties during a conference call on Monday, April 4, 2022, that they have experience with individuals on their caseloads who wear work boots to perform their job duties.   Both officers indicated that a location monitoring device can be adjusted both in placement on the leg and tightness to accommodate work boots.   Additionally, should this Court remove the location monitoring condition and require Defendant Johnson to merely call into a pre-trial Services officer, the Eastern District of Virginia does not support a call-in reporting service, per Officer Smith. Therefore, the courtesy supervision currently offered by the Eastern District of Virginia, would cease and supervision would be returned to the District of Columbia.   Furthermore, should Defendant Johnson be subjected to home visits and check-in at the Richmond pre-trial services office, per Officer Smith, the office in Richmond is approximately 45 minutes away from Defendant Johnson's home.   This requirement would be not only onerous on Defendant Johnson himself, but also on the officers in the Eastern District of Virginia, who are supervising as a courtesy.   If such supervision becomes too onerous, then Eastern District of Virginia could determine that they will no longer supervise Defendant Johnson, putting that burden back onto the pre-trial services office in the District of Columbia.

    **IV.**    **Similarly Situated Defendants**

As an initial matter, the government understands that the U.S. Court of Appeals for the D.C. Circuit has emphasized the individualized nature of each detention decision. *See United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021); however, the Court may want to consider that many individuals charged with conduct similar or the same as Defendant Johnson remain incarcerated or are released with conditions similar to those in the present case. Defendant Nicolas Brockhoff, 21-cr-524, who sprayed law enforcement officers with a fire extinguisher remains in custody. Defendant Clayton Mullins, 21-cr-35-4, who assaulted a law enforcement officer at the mouth of the Lower West Terrace tunnel, remains on curfew from 10:00 p.m. to 6:00 a.m. and subject to electronic monitoring. Defendant Eric Munchel, 21-cr-118, who carried a taser into the U.S. Capitol, but did not assault anyone, after an appeal of his detention order to the D.C. Court of Appeals, was released from detention to home confinement with GPS electronic monitoring. Defendant Thomas Sibick, 21-cr-291, who impeded law enforcement and took an officer's equipment, is released subject to 24-hour home confinement with exceptions for medical necessities, court appearances, and verified employment activities; Sibick also has an electronic monitoring condition. Defendant Nicolas Languerand, 21-cr-353, remained incarcerated from his arrest in April 2021 until he was sentenced to 44 months incarceration, for throwing a stick, traffic cone, and canister of pepper spray at officers within the Lower West Terrace tunnel. Defendant Jose Padilla, 21-cr-214, remains in custody for acting in conjunction with others to use a large sign to push against law enforcement officers and throwing a flagpole type object at officers within the Lower West Terrace tunnel. Defendant Jeffrey Scott Brown, 21-cr-178, is detained for deploying a pepper spray type irritant at officers in the LWT

tunnel at close range. Defendant Johnson is similarly situated to these and other defendants who have similar or more restrictive conditions; therefore, he should be treated similarly, and the current conditions should remain unmodified.

### V.     Conclusion

Defendant Johnson was a leader and instigator of the violence and destruction that ravaged the U.S. Capitol on January 6, 2021. Not only was Defendant Johnson one of the first to breach the restricted perimeter, but he also created a pathway for others to descend upon the building and urged other rioters to engage in criminal activity. The inconvenience that Defendant Johnson persists in complaining of is minor compared to accountability the pretrial release condition ensure. The fact that Defendant Johnson has remained compliant with his conditions of pretrial release is evidence that the conditions are effective.

//
//
//
//
//
//
//
//
//
//
//

Defendant Johnson has already received de novo review of his release conditions from a United States District Court Judge. (*see* Minute Entry dated July 27, 2021; 21-cr-332.) Insofar as Defendant Johnson renews arguments that were previously made and denied, his repetition of such arguments does not provide them with any greater merit, especially considering information from pre-trial services refuting the factual basis for the claim concerning his attire. The government opposes any modification and urges the Court to deny Defendant Johnson's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: *Jacqueline Schesnol*
Jacqueline Schesnol
Arizona Bar No. 016742
Capitol Riot Detailee
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004-4449
(602)514-7689
jacqueline.schesnol@usdoj.gov