**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-cr-537 (JMC)** |
| | : | |
| **RYAN SAMSEL, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES' OMNIBUS MOTION IN _LIMINE_**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following motions in _limine_ regarding certain arguments and evidence that may be raised or offered at trial.

Motions in _limine_ are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." _Graves v. District of Columbia_, 850 F. Supp. 2d 6, 10 (D.D.C. 2011). The government presents these issues to the Court in an effort to prepare this case for an efficient trial. For the two motions herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

**Motion in _Limine_ No. 1:**     **To Limit Unnecessary Discussion of Security-Related Topics**

The government moves to preclude the admission of any evidence, through cross-examination or through the defense case-in-chief, or argument by counsel, regarding certain sensitive, security-related topics. Specifically, the government seeks to preclude evidence or argument concerning 1) the exact locations of U.S. Capitol Police ("USCP") security cameras and 2) the protocols of the U.S. Secret Service ("USSS"). As explained below, these two topics have little to no probative value but would compromise significant security interests if needlessly disclosed to the public. The government does not intend to elicit any of the following topics in its

1

case-in-chief and, for that reason, cross-examination on such topics may simply be beyond the scope of direct examination and impermissible for that reason. *See* Fed. R. Evid. 611(b). To the extent that Defendant seeks to argue that any of the following topics are relevant and within the scope of the government's examination, the government requests an order under Fed. R. Evid. 403 foreclosing unnecessary cross-examination on these topics.

It is well established that this Court may reasonably limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). For one thing, the Court may prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). The Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).[1]

---

[1] Even if evidence may be relevant to an affirmative defense, that evidence should not be elicited during cross-examination of government witnesses during the government's case-in-chief. Instead, it would be elicited (if at all) only after a defendant sufficiently establishes that defense through affirmative evidence presented during their own case-in-chief. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief).

More specifically, even if marginally relevant, this Court may exclude evidence under Federal Rule of Evidence 403 on the ground that its marginal probative value is significantly outweighed by the national security risks implicated by that evidence's use at trial. The Supreme Court has recognized that trial courts' balancing under Federal Rule of Evidence 403 should account for concerns extrinsic to the litigation, such as "witness' safety." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988). Accordingly, courts have properly balanced the sensitivity of national security-related information against the probative value of such information to the case, excluding the evidence where its relevance is slight. *See, e.g., United States v. Marshall*, 544 F. Supp. 3d 1032, 1042 (D. Mont. 2021); *United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005); *cf. United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (endorsing balancing test in context of Classified Information Procedures Act).

This Court should take the same step here for the reasons given below, as other courts in this District have routinely done for these topics. *E.g. United States v. Bru*, No. 21-352, 2023 WL 4174293, at *2 (D.D.C. June 26, 2023); *United States v. Zink*, No. CR 21-191, 2023 WL 5206143, at *2 (D.D.C. Aug. 14, 2023). The marginal probative value of the exact positions of USCP cameras, the camera map, and U.S. Secret Service protocols are substantially outweighed by national security concerns, and any probative value can be addressed without compromising the protective functions of government agencies.

### A. Exact Locations of USCP Cameras

The government produced the exact locations of USCP closed-caption video ("CCV"), including maps showing each camera's physical location, in discovery pursuant to the Highly Sensitive designation of the Protective Order. The purpose of that disclosure was to permit Defendants to make use of such information in order to identify evidence and prepare for trial.

However, those locations do not serve to illuminate any fact of consequence at trial. That is particularly true in this case, where only one of five Defendants were present inside the U.S. Capitol building, so the government's presentation on the subject will be relatively limited. To the extent interior or exterior CCV footage is introduced, a general description of its location, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from evidence of specific camera locations or the map of all CCV cameras.

On the other hand, the national security implications at stake are significant. The U.S. Capitol Police's surveillance system serves an important and ongoing function in protecting Congress. Furthermore, the maps that show the physical location of cameras have been designated as "Security Information" under 2 U.S.C. § 1979, which generally requires approval of the Capitol Police Board before they may be released. If a map that revealed the location of all Capitol cameras were introduced in this trial, or in any trial, it would become available to the general public and foreign adversaries. Anyone could discern the Capitol Building's camera coverage as of January 6, 2021, including parts of the Capitol where cameras were not then installed.

Accordingly, the security considerations of introducing this evidence clearly outweigh significantly any marginal probative value of the specific locations or map of CCV cameras.

**B. Secret Service Protocols**

To meet its burden of proof at trial, the government may call a witness from the United States Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect former Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol. The witness would further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members. The

purpose of this testimony would be to explain—in part—the bases for enhanced security controls at the Capitol on January 6 as well as establish elements of several charges: (1) with respect to Counts Five through Seven of the Fourth Superseding Indictment, that the Vice President was visiting the Capitol building on January 6, 2021, rendering the Capitol building and its grounds a "restricted building or ground" under 18 U.S.C. § 1752(c)(1)(B) (defining such term to include "any posted, cordoned off, or otherwise restricted areas—. . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting"); (2) with respect to Counts One and Eleven, that the civil disorder at the Capitol on January 6 interfered with a "federally protected function." 18 U.S.C. § 231(a)(3).

The very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive Branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the federally protected function performed by the Secret Service as testified to on direct exam, namely, protecting the Vice President and his family. The government further requests that such order preclude cross-examination that would elicit information that does not directly relate to whether the Secret Service was performing that function at the Capitol on January 6, 2021. Specifically, cross-examination should not be permitted to extend to (1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees. These topics have no relevance to any issue at controversy, and even if they did, any relevance would be

substantially outweighed by the danger of prejudicing the government's legitimate interest in the safety of senior government officials. *See* Fed. R. Evid. 403.

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope of direct examination should be excluded as irrelevant or unduly prejudicial. The Secret Service's general protocols about relocation for safety are completely irrelevant to the only facts at issue—whether the Vice President was the Capitol that day and whether the breach interfered with his details' function. Fed. R. Evid. 401. Similarly, evidence of the nature of Secret Service protective details in general is not relevant in this case. The disorder on January 6 interfered with the Secret Service's duties to protectees in this case insofar as they were required to take action to evade the mob. The number or type of assigned agents on a protective detail is simply not relevant and could not alter the probability that there was interference with the Secret Service. None of the other elements to be proven, or available defenses, implicates further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.

If the defense believes that it is necessary to present evidence or cross-examine witnesses about the exact locations of USCP cameras or USSS procedures, the government requests that the Court conduct a hearing in camera to resolve the issue. Courts have found that in camera proceedings are appropriate in circumstances where security concerns like these are present. *See United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248

(7th Cir. 1979) ("It is settled that in camera . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that in camera proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976) (*per curiam*) (same). At any such hearing, defendants seeking to probe such subjects should be required to make a specific proffer of some relevant purpose that is not substantially outweighed by the prejudice that disclosure would inflict on the government's security interests. *Cf. United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991) (explaining that a "proffer of great specificity" was necessary to support admission of testimony that could have proper or improper purposes).

**Motion in *Limine* No. 2:**     **To Admit Certain Statutes and Records**

The government also moves in limine to take judicial notice of or admit federal statutory provisions, constitutional provisions, and portions of the Congressional record from January 6, 2021 that are relevant to the charged offenses.

**A. Judicial Notice of the Federal Electoral College Certification Law**

The proceedings that took place on January 6, 2021, were mandated by, and directed under the authority of, several constitutional and federal statutory provisions. In fact, as Vice President Pence gaveled the Senate to Order on January 6, 2021 to proceed with the Electoral College certification proceeding, he quoted directly from, and cited to, Title 3, United States Code, Section 17.

The government requests that the Court take judicial notice of, and admit into evidence, copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment, as well as 3 U.S.C. §§ 15–18 relating to the Electoral College certification proceedings. These are

attached as Exhibits 1–6. It is well established that district courts may take judicial notice of law "without plea or proof." *See United States v. Davila-Nieves*, 670 F.3d 1, 7 (1st Cir. 2012). The government makes this request even though "no motion is required in order for the court to take judicial notice." *Moore v. Reno*, No. 00-5180, 2000 U.S. App. LEXIS 35425; 2000 WL 1838862 (D.D.C. Nov. 14, 2000).

### B.      Admission of the Congressional Record and S. Con. Res 1

The Congressional proceedings on January 6, 2021 were memorialized in the Congressional Record. The Congressional Record is a public record under Federal Rule of Evidence 902(5). *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 503-504 (S.D.N.Y. 2017) (Congressional transcripts). The government may introduce portions of the Congressional Record at trial, including the bodies' "concurrent resolution to provide for the counting on January 6, 2021, of the electoral votes for President and Vice President of the United States," S. Con. Res. 1, 117th Cong. (2021). These records should be admitted as self-authenticating. Rule 902 provides that a record can be "self-authenticating," meaning it "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. One example is an "Official Publication[]," defined as any "book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5). The congressional record qualifies as one such congressionally published record, and so is self-authenticating under Rule 902(5).

### CONCLUSION

Motions in limine are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). The government presents these issues to the Court in an effort to prepare this case for an efficient trial.

For the reasons set forth herein, the United States respectfully requests that this Court grant the government's motions in *limine* set forth herein.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

*/s/ Hutton Marshall*
J. Hutton Marshall
Karen Rochlin
Christopher Brunwin
Kyle Mirabelli
Assistant U.S. Attorneys
DC Bar No. 1721890
601 D Street, N.W.
Washington, D.C. 20579
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov