UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-537-JMC |
| v. | : | |
| | : | |
| RYAN SAMSEL, | : | |
| JAMES TATE GRANT | : | |
| PAUL RUSSEL JOHNSON | : | |
| STEPHEN CHASE RANDOLPH | : | |
| JASON BENJAMIN BLYTHE, | : | |
| | : | |
| Defendants. | : | |

### GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE

The United States respectfully submits this response in opposition to motions *in limine* filed by Defendants Paul Russell Johnson and James Tate Grant regarding the government's preliminary exhibits. ECF Nos. 278, 280.[1]

### BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the results of the Electoral College vote for the 2020 U.S. Presidential Election. While the certification process was underway, a large crowd gathered outside the United States Capitol, entered its restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

---

[1] Johnson's and Grant's motions were joined by Defendants Stephen Chase Randolph and Ryan Samsel. ECF Nos. 281, 282.

1

On January 6, 2021, Defendants confronted and attacked law enforcement officers at the United States Capitol. Defendants specifically attacked United States Capitol Police Officers C.E. and D.C. on Capitol grounds as part of their attempt to prevent the certification of the vote in the 2020 presidential election. Defendants continued further onto Capitol grounds past additional police lines and barricades established that day, continuing to confront police or otherwise attempt to drive the Congressional proceedings inside the Capitol building to a halt. Based on their actions on January 6, 2021, the five defendants were charged with Civil Disorder, in violation of Title 18, United States Code, Section 231(a)(3); Assaulting, Resisting or Impeding Certain Officers, in violation of Title 18, United States Code, Section 111(a)(1); Assaulting, Resisting or Impeding Certain Officers Using a Dangerous Weapon or Inflicting Bodily Injury, in violation of Title 18, United States Code, Section 111(a)(1) and (b); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Sections 1752(a)(1) and (b)(1)(A); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Sections 1752(a)(2) and (b)(1)(A); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, Resulting in Significant Bodily Injury, in violation of Title 18, United States Code, Sections 1752(a)(4), (b)(1)(A) and (b)(1)(B); Disorderly Conduct in a Capitol Building or Grounds, in violation of Title 40, United States Code, Section 5104(e)(2)(F); Obstruction of an Official Proceeding, in violation of Title 18, United States Code, Section 1512(c)(2); Entering and Remaining in Certain Rooms in the Capitol Building, in violation of Title 40, United States Code, Section 5104(c)(2)(C); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(c)(2)(G). ECF No. 245 (Fourth Superseding Indictment).

Trial is set to begin in this matter on October 23, 2023. Defendants James Tate Grant and Paul Russell Johnson have filed motions seeking pretrial rulings on evidentiary issues in advance of trial. Most of these disputes have been resolved by the government's latest exhibit list provided to Defendants on October 5, 2023 or are expected to be resolved by stipulations discussed by the parties. The government otherwise opposes these motions for the reasons provided herein.

## ARGUMENT

I.   **Paul Russell Johnson's Motion in Limine**

Johnson objects to six categories of evidence: compilation videos, overview exhibits, cell phone evidence, co-defendants' statements, medical records, and miscellaneous objections to specific exhibits. The government addresses these categories of evidence individually.

   A.   "Compilation videos"

Johnson asks the Court to exclude third-party videos that include multiple video segments in a single video exhibit. ECF No. 178 at 1-2. On October 5, 2023, the government produced an updated exhibit list to Defendants that the government expects will resolve this dispute. Specifically, for video exhibits that capture several different geographic locations at various times on January 6, 2021, the government has either shortened the video exhibits to the relevant portion or identified the approximate relevant periods of times in the exhibits. To the extent that Johnson argues that content in longer videos is so unduly prejudicial to Johnson or other defendants that the video file cannot be provided to the Court as an exhibit despite the government representing that it will play only the video's relevant portion, the Court should not exclude any such exhibit without Johnson identifying these particular exhibits and the basis for asserting that they would be unduly prejudicial.

B.  Overview exhibits

Johnson also moves to exclude two exhibits that provide an overview of the breach of the U.S. Capitol and of the Congressional proceedings that were disrupted that day, arguing that such evidence is not relevant to the charges against Johnson and his co-defendants and that any probative value is substantially outweighed by unfair prejudice, confusion of the issue, undue delay, and the needless presentation of cumulative evidence.

The two proposed overview exhibits offered by the government have been routinely admitted in Capitol riot prosecutions, and objections identical to Johnson's have been raised and rejected on multiple occasions. *See United States v. Bennett*, No. 21-312 (JEB), 2023 WL 6460026 at 5 (D.D.C. Oct. 4, 2023); *United States v. Carpenter*, 21-305 (JEB), 2023 WL 1860978 at *3 (D.D.C. Feb. 9, 2023); *United States v. Stedman*, No. 21-383 (BAH), 2023 WL 3303818 at *1-2 (D.D.C. May 8, 2023) (collecting cases) (characterizing the defendant's arguments to preclude overview evidence as "untenable"). In *Stedman*, Judge Howell found that that the relevance of "events the defendant was not present for and did not observe," *id*. at *1, was "obvious" because of the vast size of the mob and its impact on law enforcement and the direct consequence of a catastrophic security risk that triggered a lengthy delay of the certification proceeding. *Id*. None of the defendants in this case left the Capitol after the initial breach near the Peace Circle, and none discontinued their effort to storm the Capitol as part of a mob. All of the government's general evidence about the events of January 6, "even if the defendants did not personally observe all of the conduct engaged in by others in multiple parts of the Capitol building and restricted grounds" assists the fact finder in better understanding the actions of that day and the alleged criminal conduct of the defendants. *Stedman*, 2023 WL 3303818 at *2.

4

Further, as a general matter, "the Government must be given leeway to place a defendant's actions into context" and to assist the fact finder "in 'organizing and evaluating evidence which is factually complex and fragmentally revealed.'" *Carpenter*, 2023 WL 1860978 at *3 (cleaned up). The government's overview evidence in this case serves those objectives. Exhibit 101, an overview of the Capitol breach captured by U.S. Capitol Police closed-caption video ("CCV"), is relevant for several reasons for the charges against Johnson and his co-defendants. All five Defendants are charged with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), which requires the government to prove that the defendant attempted to or did in fact obstruct, influence, or impede an official proceeding. All five defendants are also charged with interfering with law enforcement officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3), under which the government must prove both the existence of a civil disorder and the fact that this civil disorder affected interstate commerce or a federally protected function. And all five are charged with Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Dangerous or Deadly Weapon, in violation of 1752(a)(2) and (b)(1)(A), under which the government must prove that their conduct in fact impeded or disrupted the orderly conduct of government business or official functions. For all three of these offenses, an important portion of the government's case will be connecting the Defendants' individual actions, together with the other rioters on Capitol grounds, to the disruption of the joint session of Congress convened on January 6, 2021.

For Johnson in particular, evidence as to when, where, and how the breach occurred is highly relevant to his culpability. The evidence at trial will show that Johnson carried a megaphone with him before and during the riot at the U.S. Capitol. Within and around the restricted perimeter surrounding the U.S. Capitol, Johnson used this megaphone to shout commands to the crowd, to alert them to what he perceived to be happening inside the building, and to encourage them to take

5

violent and unlawful action to stop the Congressional proceedings taking place inside the Capitol. Johnson himself committed violence to obstruct Congress from certifying the Electoral College vote that day, and he loudly and continuously coordinated, encouraged, and commanded others to do the same. Johnson may not have gone inside the building, but the government intends to prove at trial that Johnson intended to help facilitate the initial breach of the Capitol building through his words and actions.

Exhibit 102, a 9-minute video montage of the Congressional proceedings that day, is also admissible for the same reasons. The government has charged the five defendants with multiple offenses listed above arising from their role in disrupting the Joint Session of Congress on Jan. 6, 2021. The government has reduced the evidence it plans to show of the joint session of Congress—the actual proceedings that Defendants are charged with obstructing—to a nine-minute video. This can hardly be described as cumulative, confusing, or the cause of undue delay, as Johnson contends. Johnson's argument that such evidence could be unduly prejudicial against him should be rejected as well. The montage presents a relatively short glimpse of the proceedings as they occurred without annotation to prove an essential element of several charges against Johnson and his co-defendants.

No authority Johnson offers provides any basis for exclusion of the government's overview or compilation exhibits. He invokes *United States v. Evans*, 216 F.3d 80, 87 (D.C. Cir. 2000), a case finding harmless error in the admission of hearsay evidence in a decision that did not consider, let alone reject, the prosecution's ability to present relevant background evidence of events a defendant did not personally observe. Johnson also attempts to rely on *Old Chief v. United States*, 519 U.S. 172 (1997), which held that "the prosecution is entitled to prove its case by evidence of its own choice, and a defendant may not stipulate or admit his way out of the full evidentiary force

6

of the case as the government chooses to present it." *Id*. at 186-87. In *Old Chief*, in the context of that felon-in-possession prosecution, the Court found error in the admission of Old Chief's prior conviction because Old Chief agreed to formally stipulate to his status as a convicted felon and the details of his prior offense would not prove or disprove that element of the offense. Because the element in question was an "abstraction" and in the context of the "peculiarities of felony convict status" and its proof, the Supreme Court reversed Old Chief's conviction since Old Chief was willing to stipulate to felony status. The limited and factually specific holding in *Old Chief*, however, has no application here where Johnson is not offering to stipulate to an abstract legal condition and where he attempts to dilute the presentation of evidence that judges have determined has "obvious" relevance.

In conclusion, the government has largely reduced its proposed exhibits covering the overarching events of the Capitol riot and the Congressional proceedings it disrupted to two video exhibits. These exhibits do more than provide necessary context for the charges against Johnson—though that alone justifies their admission—they also show the extent of the harm wrought by Johnson's actions. Further, Johnson does not address any of the decisions cited above or within *Stedman* finding that that evidence he objects to is relevant and admissible. He presents no legal authority showing those decisions were wrongly decided. Accordingly, although the United States is attempting to streamline and focus its overview evidence, the Court should deny Johnson's motion to exclude Exhibits 101 and 102 or the government's compilation videos.

    C.    <u>Cell phone evidence</u>

Johnson also moves to exclude all items marked on the government's exhibit list taken from Johnson's cell phone extraction, as well as some of what was marked from the cell phone of the romantic partner Johnson has resided with for several years. The government does not intend

to introduce 1) evidence from Johnson's phone, 2) a photo of a T-shirt stating "proud boys did nothing wrong" and 3) messages between Johnson's partner and third parties, which resolves the majority of Johnson's demands.

Johnson also asks the Court to exclude a series of messages sent between Paul Johnson and his romantic partner between Dec. 20, 2020 and Jan. 6, 2021 in which they discuss, among other things, logistics surrounding their travel to Washington, D.C. in advance of January 6. First, while it is true that counsel for Johnson and the government have discussed a stipulation as to Johnson's identity and presence on U.S. Capitol grounds on January 6, 2021, the parties have yet to execute such a stipulation, and so at the very least, the government requests that the Court hold this portion of Johnson's motion in abeyance until the pretrial conference when the government expects any such stipulation will have been finalized. Regardless, this text conversation in which Johnson discusses his intention to travel to the Capitol on the day of the Electoral College Certification proceedings should not be excluded as irrelevant. Even if Johnson's presence on Capitol grounds is ultimately undisputed, these text conversations should nevertheless be admitted as relevant. The text conversations between Johnson and his partner marked by the government are not voluminous (approximately 30-40 in total), are not inflammatory, and Johnson's statements in the days leading up to January 6, 2021 bear on his motivations and state of mind—including the urgency of Johnson's planning—in the leadup to the events of that day.

D.   Redacting Co-Defendant's Statements

Johnson's motion in limine also seeks redactions to news interviews conducted with Defendant Ryan Samsel in order to remove references to Johnson that could implicate the *Bruton* rule. *Bruton v. United States*, 391 U.S. 123 (1968). While the government and defense counsel continue to coordinate regarding exhibits and intend to discuss potential redactions to the Samsel

8

news interviews referenced in Johnson's motion, neither these interviews nor any other co-defendant statements the government may offer at trial implicate *Bruton*.

*Bruton* and its progeny stand for the proposition that "a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201–02 (1987); *Bruton v. United States*, 391 U.S. 123 (1968). Although the D.C. Circuit has yet to decide the issue, most others have held the *Bruton* rule inapplicable in a bench trial. *Johnson v. Tennis*, 549 F.3d 296, 300 (3d Cir. 2008) (collecting cases) ("The *Bruton* rule is inapplicable to the incriminating confession of a non-testifying codefendant in a joint bench trial because *Bruton* applies solely to jury trials. In so deciding, we join the myriad Courts of Appeals that have recognized that the rule and rationale of Bruton do not apply to bench trials."); 21A Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5064.2, at 290 & n. 5 (2d ed. 2005 & Supp.2007) ("[B]ecause *Bruton* seeks to protect the defendant against the inability of the jury to understand or abide by limiting instructions, the Bruton doctrine does not apply in cases tried to the court."). The reason that the concerns underlying *Bruton* are diminished when the judge acts as the fact finder is clear: "A jury may have difficulty in disregarding extrajudicial statements implicating a defendant. We will not presume that a judge suffers from the same disability. Indeed, the presumption is to the contrary." *United States v. Castro*, 413 F.2d 891, 895 (1st Cir. 1969).

Additionally, even if this case were to be tried before a jury, Johnson has failed to show the statements Samsel made to reporters fall within the scope of *Bruton*. The motion does not identify any statement by Samsel implicating Johnson. The *Bruton* rule applies only when a codefendant's statement "expressly implicates" the defendant. *United States v. Washington*, 952

9

F.2d 1402, 1405 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 1009 (1982). Statements that do not refer directly to the defendant himself and which become incriminating only when linked with evidence introduced later at trial do not fall within the scope of *Bruton*. *See Gray v. Maryland*, 523 U.S. 185, 196 (1998); *see also United States v. Straker*, 800 F.3d 570, 599 (D.C. Cir. 2015) (where evidence identified more than a dozen different men involved in the crimes charged, it was unlikely that the jury would link defendant's mention of an unspecified person or guy to a specific defendant). In this case, the evidence identifies thousands of additional perpetrators. Johnson's failure to identify a single statement directly identifying or incriminating him justifies rejection of his claim under *Bruton*.

Moreover, for the *Bruton* rule to apply, a statement must be testimonial. *See United States v. Wilson*, 605 F.3d 985, 1017 (D.C. Cir. 2010) (defendants had no *Bruton* claim where disputed statements were not testimonial and thus did not implicate the Confrontation Clause); *United States v. Allgood*, No. 21-416 (RDM), 2022 WL 715222 at *5 (D.D. C. Mar. 10, 2022) (*Bruton* only applies to testimonial hearsay such as affidavits, custodial examinations, prior testimony a defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially); *United States v. Cooper*, No. 15-152 (RMC), 2017 WL 318623 at *1 (D.D.C. Jan. 23, 2017) (surreptitiously recorded conversation of codefendant talking to the mother of his child that mentioned defendant were not testimonial and did not implicate *Bruton*); *see also United States v. Reed*, No. 15-100, 2016 WL 6946983 at *29 (E.D. La. Nov. 28, 2016) (statement made to news reporter was not testimonial; reporter's primary and likely only purpose was to create an accurate news story and not to create an out-of-court substitute for trial).

Johnson has failed to allege the elements of a *Bruton* claim, while federal courts of appeal have unanimously ruled that the rule has no application in a bench trial. Accordingly, with respect to *Bruton*, Johnson's motion should be denied.

E.      Medical Records

Johnson asks the Court to exclude as hearsay the contents of the medical records marked by the government as exhibits 805-807 unless they constitute statements to medical providers made for the purposes of a medical diagnosis or treatment under Fed. R. Evid. 803(4). In addition to portions of exhibits 805-807 admissible through Rule 803(4), the government also intends to offer exhibits 806-806.5 in their entirety, which may be excepted from the rule against hearsay as records of a regularly conducted activity, Fed. R. Evid. 803(6), provided that the government calls the treating physician, Dr. Molly Price, M.D., or another competent witness capable of establishing that the records were created at or near the time when Dr. Price provided the diagnosis or treatment, that the records were kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, and that making these records was a regular practice of that activity. Fed. R. Evid. 803(6). *E.g. Merendo v. Ohio Gastroenterolgy Grp., Inc.,* No. 2:17-CV-817, 2019 WL 3254620, at *2 (S.D. Ohio July 19, 2019) (providing that a "treating physician who authored the record" was a qualified witness under Rule 803(6)); *Manocchio v. Moran*, 919 F.2d 770, 775 (1st Cir. 1990) ("[T]he introduction of an autopsy report in tandem with live testimony by its preparer might be the optimum course" for admission under Rule 803(6)).

    F.    <u>Miscellaneous objections by Johnson</u>

        *1.*    *Exhibit 091:* The government does not intend to seek to admit this exhibit.

        *2.*    *Exhibit 611:* The government does not intend to seek to admit this exhibit.

        *3.*    *Exhibits 1006-1011*: The government will not seek to admit Johnson's clothing at trial if a stipulation is executed as to Johnson's identity. The government requests that the Court withhold ruling on the admissibility of the clothing pending resolution of negotiations on this stipulation.

## II.    James Tate Grant's Motion in Limine

Similar to Johnson's motion in limine, Grant's filing addresses particular categories of evidence, requests exclusion or limitation of certain exhibits, and in some circumstances raises an issue for the Court but does not request specific action by the Court in advance of trial at this time. The government limits its response to portions of Grant's motion that request specific action from the Court in advance of trial.

    A.    <u>Maps and Diagrams (000 Series)</u>

Grant raises two issues with the government's renderings of the Peace Circle area of Capitol grounds. First, he takes issue with certain renderings containing an anonymous figure added for scale. The government does not plan to offer these renderings as exhibits at trial. Second, Grant argues that the renderings should be excluded because they do not contain a scale denoting actual distance and do not accurately depict "the geography of the Peace Circle." ECF No. 280 at 2. These renderings are demonstrative exhibits to be used during trial to refer to approximate locations during relevant events; they will not be offered to prove precise distances during trial where an exact scale would be necessary. Any dispute as to whether the renderings of Capitol

grounds differ from how they appear in reality goes to the weight of this evidence, not admissibility.

    B.    <u>Overview Exhibits (100 Series)</u>

As to the two montage videos offered by the government showing Capitol Police CCTV (Exhibit 101) and the Jan. 6, 2021 Congressional proceedings (Exhibit 102), Grant argues, "Some of the events [in the exhibits] do not appear to have any relationship at all to the charges against defendant James Grant (or his codefendants) and the use of "montage" or overview videos ought to be limited in this non-jury trial." For the sake of brevity, the government refers to its response to Johnson's motion on this point on pages 4 through 7 of this filing. Further, these exhibits are uniquely relevant to Grant among the Defendants in this matter given that Grant in fact entered the Capitol building and reached as far as Senator Merkley's Office. This makes video of what occurred inside the Capitol building during and around this period of time highly relevant to understanding the impact of Grant and other rioters inside the building on the Congressional proceedings and law enforcement's response to the breach. Finally, as Grant does not request specific relief in this motion as to these two exhibits, the government ask that this Court reserve taking action on this issue with respect to Grant until trial.

    C.    <u>Still Photographs (600 Series)</u>

The government does not intend to seek to admit the photographs under this exhibit list series aside from Exhibit 617 (file name: Still of Grant Randolph Blythe and Officers DC TL). Grant objects to Ex. 617 because "it captures only one moment from of [sic] a larger series of events and is thus misleading," and because the government will presumably offer a video of these events. This still photograph is in fact a screenshot taken from Ex. 302 (file name: 4. North Stairs West Terrace - C.E.), a third-party video recording. In addition to Ex. 302, Ex. 617 as a standalone

photograph is helpful to identify the precise locations and actions of certain defendants and officers during the Peace Circle breach, and to the extent any defendant seeks to argue that this photograph provides a misleading or incomplete impression of the events as they occurred, Ex. 302 provides the additional context surrounding this still image.

D. Phone extraction

Finally, Grant moves to exclude photographs obtained from his cell phone and an FBI 302 report. The government does not intend to offer the 302 report and referenced photographs as evidence at trial.

## CONCLUSION

For the foregoing reasons, Defendants Johnson's and Grant's motions *in limine* should be denied, denied as moot without prejudice to re-raise the issues if implicated at trial, or held in abeyance until trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Hutton Marshall*
J. HUTTON MARSHALL
KYLE R. MIRABELLI
CHRISTOPHER BRUNWIN
Assistant U.S. Attorney
DC Bar No. 1721890
601 D Street, N.W.
Washington, D.C. 20579
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov