## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **Criminal No. 1:21-cr-537 (JMC)** |
| | **)** | |
| **PAUL RUSSELL JOHNSON,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

### PAUL RUSSELL JOHNSON'S MOTION FOR RECONSIDERATION

During trial on October 24, 2023, Mr. Johnson, through undersigned counsel, objected to the admission of certain third-party videos, offered through the testimony of Seargent Lively, on the ground that the government had failed to properly authenticate them as required by Federal Rule of Evidence 901. Specifically, counsel objected to admission of the audio that accompanied these third-party, open source videos because the witness's foundational testimony related only to showing, circumstantially with visual evidence, that the video was what it purported to be. The Court held the issue in abeyance, noting that it would not, as the factfinder, listen to the audio that accompanied these videos absent further foundational evidence from the government "linking up" the authentication to the audio.

That evening, the government filed a motion to reconsider the ruling, Dkt. # 304 (arguing that testimony of U.S. Capitol Police Sergeant Tim Lively offered on October 24 was sufficient to establish the authenticity of third-party videos, specifically, Government Exhibits 313, 318, 319, 320, 324, 325, 327, 334, 335, 337,

and 339).[1]  Yesterday, the Court granted that motion, but granted the defense leave to brief the issue further given that the defense had not had the opportunity to read or respond to the government's motion for reconsideration.

This Motion argues a point addressed neither by the government's motion for reconsideration nor the Court's ruling.  Specifically, the authentication of audio that accompanies a video recording must be independently authenticated—that is, visual features show only that the *video* portion of the recording is what it purports to be.  Thus, while this Motion does not ask the Court to reconsider its earlier ruling that the videos are sufficiently authenticated by circumstantial evidence, the same ruling should not apply to the audio.  The government has offered no evidence "sufficient to support a finding that" the audio tracks in these exhibits are "what the proponent claims" they are, that is, audio accurately capturing noises the depicted in that location and at that time.  For that reason, the Court should sustain Mr. Johnson's objection and admit the current exhibits without audio, unless and until the government establishes that the audio is a fair and accurate representation of the events depicted in the accompanying video.

Courts regularly consider the admissibility of audio and visual portions of recordings separately.  For example, in *United States v. Capers*, the Court of Appeals for the Eleventh Circuit ruled that although the district court properly admitted a

---

[1] Mr. Johnson recollects that beyond the exhibits where the Court sustained objections, other exhibits including government's exhibit 340 were admitted as fair and accurate depictions of what the witness saw on January 6, 2021, but that the Court stated that it would not listen to the audio without additional foundation.

video recording, the court "should not have admitted the audio portion" of the same

recording.  *Capers*, 708 F.3d 1286, 1307-08 (11th Cir. 2013).

> For the August 3 transaction, the government offered little proof of the fidelity of the recording equipment. The extent of the evidence was Miami Police Officer Jose Mercedes's testimony that he gave the equipment to the CI before the buy, recovered it after the buy, and then gave it to a colleague for conversion to a CD. Although the government offered proof that agents independently observed the meeting between the CI and Mr. Little, thus corroborating the video portion, neither Mr. Little nor the CI testified about this transaction and there was no independent testimony to corroborate the audio of the encounter. Because there was no testimony about the fidelity of the audio equipment, and no independent evidence of the accuracy of the audio recordings, the District Court should not have admitted the audio portion of the tape.

*Id.* (internal citations omitted).  *See also People v. Smith*, 321 Ill. App. 3d 669,

674–75, 749 N.E.2d 986, 991 (2001) (holding that "the complete videotape at issue

here (i.e., the motion picture plus the sound recording) was admissible only if the

State laid the foundation necessary to admit a motion picture and the foundation

necessary to admit a sound recording"); *People v. Heading*, 39 Mich. App. 126, 132,

197 N.W.2d 325, 329 (1972) ("A video tape is nothing more than a motion picture

synchronized with a sound recording. Therefore, a complete video tape may be

received into evidence if the offering party lays the foundation necessary to admit

a motion picture and the foundation necessary to admit a sound recording.")

The usual way of authenticating audio in this Circuit is to adduce testimony

about the method of recording, and/or testimony from participants to a recorded

conversation.  *See United States v. Strothers*, 77 F.3d 1389, 1392 (D.C. Cir. 1996)

("Tapes may be authenticated 'by testimony describing the process or system that created the tape' or 'by testimony from parties to the conversation affirming that the tapes contained an accurate record of what was said.'") (quoting *United States v. Dale*, 991 F.2d 819, 843 (D.C. Cir. 1993), *cert. denied*, 510 U.S. 906, 114 S.Ct. 286, 126 L.Ed.2d 236 (1993)).  In *Dale,* for example, the court approved the admission of audio recordings where a witness "described the mechanism by which he taped telephone conversations, explained the circumstances under which he handed tapes over to government agents and testified that the tapes were fair and accurate recordings of conversations to which he was a party. . . ."  991 F. 2d at 842.

Here, the government made no attempt to authenticate the recordings by those means. Of course, the authentication standard is not lower just because one recording may be more difficult to authenticate than another, but as a threshold matter it does not even appear that the government tried—or that it would have been difficult to have done so. Instead, the government decided to just play the "open source" video in the courtroom with no hope of authenticating it through these more usual means of doing so, and ask Capitol Police officers to authenticate what they *saw* but (at least in many cases) were in no position to *hear*. The lack of foundation is especially egregious as the government plans to utilize the audio to argue criminal liability for a felony count.

Where recordings are authenticated through the more usual means, courts have generally looked to a combination of foundational facts to establish authenticity of recordings.  In *Strothers*, for example, the court admitted audio recordings of

alleged drug transactions where "a police witness described the taping and copying process and testified that the copies admitted at trial accurately represented what had occurred," and "police officers and informants who were parties to the recorded conversations themselves testified to the tapes' accuracy." 77 F.3d at 1392. *See also United States v. Celis,* 608 F.3d 818, 841–42 (D.C. Cir. 2010) (affirming admission of wiretapped recordings where government offered evidence that equipment used to record defendant's calls was in proper working order, and that only authorized personnel had access to the recordings, and where "[f]our witnesses identified the defendant and the other individuals recorded," and one official "responsible for copying the tapes[] stated that the duplication process resulted in an 'exact' copy of the original recording'"); *United States v. White*, 116 F.3d 903, 920–21 (D.C. Cir. 1997) ("Here, where one witness testified at length about the process of creating the tapes and identified the originals, and where another witness confirmed the accuracy of the portions of the tapes with which he was familiar, the Government met its burden.").

These cases are far more on point than those the government offered insofar as they all address *recordings*, whereas all but two of the cases the government relies on concerned static evidence such as photographs and emails. *See* Dkt. # 304 at 2-7 & n.1 (citing cases). This difference is material because recordings, "more so than photographs or other demonstrative evidence . . . are susceptible to alterations that may be impossible to detect," as the Court of Appeals Fifth Circuit noted long ago in *United States v. Biggins. Biggins*, 551 F.2d 64, 66–68 (5th Cir. 1977) (discussing sound recordings in particular, and concluding that "court properly admits a sound

recording into evidence only when the party introducing it carries its burden of going forward with foundation evidence demonstrating that the recording as played is an accurate reproduction of relevant sounds previously audited by a witness").

The government's other two cases are unpersuasive as well. One only noted that it was possible that a civil plaintiff might be able to authenticate a video "through other video and photographic evidence," at trial as grounds for denying summary judgment, without ruling that the plaintiff had in fact done so. *Diaz v. County of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal 2021) (discussed at Dkt. # 304 at 6). And the other case about recordings cited by the government, *United States v. Rodean*, in which United States District Judge McFadden found that USCP CCTV screenshots could authenticate a third-party video, *Rodean*, 1:21-cr-57-TNM, Dkt. # 50 at 2, is of little weight because in that case the defense contested the government's motion only on procedural grounds—the issue of authenticity was not actually litigated. *Id.* at 3 ("Rodean does not object to the government's motion" except on procedural grounds).

Finally, the concern about the facility with which audio-visual material can be altered, which the Fifth Circuit raised in *Biggins* in 1977, is immeasurably more real today, nearly 50 years later, after several revolutions in recording, editing, and publication technology and access. The concern is particularly heightened where recordings made by non-parties who are not subject to examination are at issue. And it is especially stark in cases arising from the events of January 6, which instantly,

and for months and years later, generated millions and millions of internet postings of bits and pieces of government and third-party video and audio.

Yet, despite that, the government has offered—at least with respect to the audio recordings—nothing like what the D.C. Circuit has typically approved for the admission of recordings, namely no "evidence about the process or system that created" the recordings it seeks to introduce, and no testimony "from parties to the conversation" or other oral statements in the proffered exhibits that "affirm[] that the [recordings] contain[] an accurate record of what was said." *Strothers*, 77 F.3d at 1392. Absent authentication of the audio, the Court should therefore admit into evidence only the video portion of the challenged Government Exhibits.

Respectfully submitted,

PAUL RUSSELL JOHNSON
By Counsel,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
Todd M. Richman
Assistant Federal Public Defenders
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org
Todd_Richman@fd.org