UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:21-cr-537 (JMC) |
| | ) | |
| PAUL RUSSELL JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MOTION TO DISMISS COUNT TEN</u>

Paul Rusell Johnson, through counsel, renews his motion to dismiss Count Ten of the Fourth Superseding Indictment, charging him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) & 2, *see* ECF No. 202, ECF No. 291 at 5-6, or in the alternative asks this Court to dismiss Count Ten because the evidence presented at trial is insufficient to sustain a conviction, Fed. R. Crim. Pro. 29, and because the Grand Jury appears to have relied on improper legal instructions in returning a finding of probable cause.[1]

I.       Factual and Procedural Background.

Count Ten of the Fourth Superseding indictment alleges that Mr. Johnson within the District of Columbia and elsewhere,

attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's

---

[1] The Court could also hold this motion in this motion in abeyance pending the remand of *Fischer v. United States*, 144 S. Ct. 2176 (2024).

certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution and 3 U.S.C. §§ 15-18.

ECF No. 245 at 7.  Mr. Johnson moved to dismiss Count Ten twice before trial, *see* ECF No. 202 (arguing, among other things, that the obstruction offense is limited to the actual destruction of evidence) & ECF No. 291 at 5-6 9 (same), and at the close of the government's evidence. Trial Trans. Oct. 31, 2023, at 21:4-21.  Reserving ruling on the Rule 29 motion, following trial the Court denied all of Mr. Johnson's motions to dismiss Count Ten. *See* Oct. 31, 2023, & Feb. 12, 2024, Minute Orders.

Prior to trial, the government filed a trial brief advancing their theory of culpability—that Mr. Johnson incited a crowd via a megaphone with the intent to disrupt an official proceeding. *See* ECF No. 301 at 4-5.[2]  The government relied on the following offense elements: "First, the defendant attempted to or did obstruct or impede an official proceeding. Second, the defendant intended to obstruct or impede the official proceeding. Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding. Fourth, the defendant acted corruptly." *Id*. at 23. This definition

---

[2] Per the government, the evidence at trial would show that: "Mr. Johnson moved with rioters to the West Plaza. Using his megaphone, Johnson loudly and continuously shouted commands to the crowd, alerted them to what he perceived to be happening inside the building, and encouraged them to take action to stop the Congressional proceedings taking place inside the Capitol. Johnson referenced Congress, saying that they were "debating because they're scared" of the crowd. He discussed the official proceeding and "the vote" Congress was undertaking inside. He also encouraged rioters to "flank" the building and recruited rioters on the West Front to move around to the East Front to "surround the building." ECF No. 301 at 5.

of the elements of the offense conflicted with the definition advanced by Mr. Johnson—that the actus reus criminalized by § 1512(c)(2) is limited to evidence destruction. ECF No. 291 at 5.

The Court accepted the government's interpretation of the law, ECF No. 313, and found Mr. Johnson guilty of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) & 2. ECF No. 339.  In the written findings of fact ("FOF"), the Court found that following the incident at Peace Circle:

> "Mr. Johnson made his way to the Lower West Terrace, where he used his megaphone to tell the crowd, "They certified the vote. You going to stand around and watch now?" and "They just stole it." While claiming the vote was stolen, Mr. Johnson implored other rioters to check their phones and social media. He told the crowd, "We need to push this shit down," and asked them to raise their voices because "they're debating because they're scared now,"

ECF No. 345 at 10 (internal citations omitted).  The Court concluded that Mr. Johnson "must have been referring to the members of Congress as the people who were "debating" and who were "scared" (because of the conduct of the mob)." *Id*. at 37. And that his "statements make clear to the Court that he was aware that a proceeding relating to certification was happening at the Capitol, that he was upset about it, and that he wanted to interfere with it." *Id*. Finding Mr. Johnson intended to obstruct an official proceeding, and that he was "part of the mob on the grounds that prevented the session from resuming," *id* at 41, the Court convicted Mr. Johnson of Count Ten.

Mr. Johnson did not file post-verdict motions, and is scheduled to be sentenced on September 19, 2024. *See* July 25, 2024, Minute Order.

II.     Argument

For the reasons that follow, Mr. Johnson moves this Court to dismiss Count Ten, because one, the government failed to properly allege a violation of the obstruction statute; two, the government failed to prove a violation of the obstruction statute; and three, the grand jury almost certainly received improper legal instructions, substantially influencing the decision to indict (and likely indicting on a factual basis that does not constitute an offense).

A.  Renewal of Motion to Dismiss Count Ten.

In light of *Fischer v. United States,* 144 S. Ct. 2176 (2024), additional authority that supports Mr. Johnson's previously filed motions to dismiss, ECF Nos. 202 & 291 at 5-6, Mr. Johnson renews his motion to dismiss Count Ten. In *Fischer*, the Supreme Court held that:

> "To prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or as we earlier explained, other things used in the proceeding, or attempted to do so."

*Id.* at 2190. In construing the scope of §1512(c)(2), the Court adhered to an interpretation that would "'give effect, if possible, to every clause and word of [the] statute,'" while taking into account the broader context of § 1512 as a whole. *Id.* at 2183 (citing *Williams* v. *Taylor*, 529 U. S. 362, 404 (2000) (cleaned up); *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 341 (1997)).

The Court explained that § 1512(c)(1) describes particular types of criminal conduct in specific terms, whereas (c)(2) functions as a residual clause for "'matters

not specifically contemplated'" by (c)(1). *Id.* (citing *Republic of Iraq* v. *Beaty*, 556 U. S. 848, 860 (2009)). To discern the scope of (c)(2), the Court relied upon the canon of *noscitur a sociis*, which teaches that a word is "'given more precise content by the neighboring words with which it is associated.'" *Id.* at 2183-4 (citing *United States* v. *Williams*, 553 U. S. 285, 294 (2008)). And according to the related canon of *ejusdem generis*, a general or collective term at the end of a list of specific items is typically controlled and defined by reference to those specific items that precede it. *Id.* at 2184 (citing *Southwest Airlines Co.* v. *Saxon*, 596 U. S. 450, 458 (2022)).

Under these principles, the Court limited the availability of § 1512(c)(2) to the prosecution of defendants who obstruct, influence, or impede an official proceeding through the impairment of the availability or integrity of records, documents, objects or other things such as witness testimony or intangible information. *Id.* at 2190.

Here, the government did not allege, much less prove that Mr. Johnson impaired the availability of records, documents, objects, or other such things—that he engaged any in any type of evidence destruction (or attempted to do so)—or that he did so corruptly when he milled around the capitol grounds, speaking through a mega-phone. Accordingly, the government has failed to allege and establish a violation of § 1512(c)(2) in this case and as a result Count Ten of the Fourth Superseding Indictment must be dismissed.

        B.  Motion for Judgement of Acquittal.

Federal Rule of Criminal Procedure 29 requires the Court to enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a

conviction."[3] A Rule 29 motion tests whether the government has met its burden to present evidence that, with all conflicting inferences resolved in favor of the prosecution, would allow a rational factfinder to "reach a subjective state of near certitude of the guilt of the accused." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). Sufficiency is measured by whether a rational jury could find the defendant guilty beyond a reasonable doubt "of every fact necessary to constitute the crime[s] with which he is charged." *Id.* at 315, 319; *see also McDaniel v. Brown*, 558 U.S. 120, 131 n.4 (2010); *Curley v. United States*, 160 F.2d 229, 232 (D.C. Cir. 1947). The legal standard to assess sufficiency is determined not as the elements were defined at trial but by the properly defined elements of the offense *See United States v. Hillie*, 39 F.4th 674, 679 (D.C. Cir.  2022).

While a court considering a Rule 29 motion must view the evidence in the light most favorable to the government, "speculation" and evidence that only allows a factfinder to "conjecturally support a finding" of guilt is not sufficient to support conviction. *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969). A Rule 29 motion requires "a hard look at the evidence," and the Court should not "view the evidence through dirty windowpanes and assume that evidence which otherwise can

---

[3] The Court set the deadline to file post-trial motions on March 18, 2024. *See* Feb. 20, 2024, Minute Order. Though past the deadline motion, Mr. Johnson submits that his motion is appropriate given the intervening change in the law, s*ee Fischer v. United States,* 144 S. Ct. 2176 (2024) (issued on June 28, 2024), and that this Court has the "power to reconsider non-final rulings." *United States v. DaSilva*, No. 1:21-CR-00564 (CJN), 2024 WL 519909, at *2 (D.D.C. Feb. 8, 2024).

be explained as equally innocent must be evidence of guilt." *United States v. Recognition Equip. Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989).

Moreover, a showing of guilt by a preponderance of evidence, without more, is insufficient to survive a motion for judgment of acquittal. *In re Winship*, 397 U.S. 358, 365 (1970); *Cty. Ct. of Ulster Cty., N. Y. v. Allen*, 442 U.S. 140, 166 (1979) (noting that beyond a reasonable doubt is a "more stringent test" than a preponderance of evidence). Accordingly, "if, upon the whole of the evidence, a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained." *Curley*, 160 F.2d at 233.

Here, as discussed above, the evidence is insufficient to sustain a conviction. The government failed to prove that Mr. Johnson obstructed, influenced or impeded an official proceeding, or attempted to do so, by impairing the availability or integrity of a record, document, "or other things such as witness testimony or intangible information." *Fischer* at 2190. Indeed, the government advanced a theory of culpability—that Mr. Johnson incited a crowd with an intent to disrupt an official proceeding—that relied on a legally invalid interpretation of § 1512(c)(2). *See* ECF No. 301 at 4-5 & 23. The government never claimed, nor did the evidence at trial show that Mr. Johnson impaired the availability or integrity of any evidence, physical or otherwise, or attempted to do so. Indeed, the government did not adduce at trial any evidence that Mr. Johnson knew about specific evidence, or had any intent whatsoever to impair the availability or integrity of a specific piece of evidence. As a

result, there is nothing in the record on which the factfinder could even base an inference supporting a finding of guilt on the properly-construed offense.

In the written findings of fact, the Court found that Mr. Johnson, after the incident at Peace Circle, went to the Lower West Terrace and made a number of statements via a megaphone that showed he was aware of the proceedings relating to certification, "he was upset about it, and that he wanted to interfere with it." ECF No. 345 at 10 & 37.  No evidence presented, nor any of the Court's findings, would allow a rationale factfinder to conclude that Mr. Johnson impaired or attempted to impair the availability or integrity of a record, document, "or other things such as witness testimony or intangible information." *Fischer* at 2190. As such, the Court should enter a judgment of acquittal on Count Ten.

C. The Grand Jury almost certainly received improper legal instructions.

Finally, and in the alternative, Mr. Johnson moves the Court to dismiss Count Ten because the Grand Jury, almost certainly, received improper legal instructions. In addition, should the instructions not be provided through informal discovery,  the Court should allow inspection of the instructions that were given to the Grand Jury with respect to Count Ten.[4]

Though there is a "presumption of regularity" in grand jury proceedings, error in the proceedings may warrant dismissal of an indictment if such error

---

[4] In compliance with the local rules, on July 25, 2024, Mr. Johnson sent an informal discovery request to the government seeking disclosure of the legal instructions provided to the Grand Jury as to Count Ten. He has not yet received a response.

"substantially influenced the grand jury's decision to indict" or "there is grave doubt that the decision to indict was free from the substantial influence of such violations." *United States v. Trie*, 23 F. Supp. 2d 55, 61 (D.D.C. 1998) (internal quotations omitted) (citing *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, (1988)); s*ee also United States v. Saffarinia*, 424 F. Supp. 3d 46, 80–81 (D.D.C. 2020). As the "legal advisor" to the grand jury, a prosecutor must provide "sufficient information concerning relevant law" to enable the grand jury to "intelligently" decide whether a crime has been committed. *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (internal citations and quotations omitted). A failure to provide proper legal instructions that substantially influenced the decision to indict warrants dismissal. *See e.g. United States v. Stevens*, 771 F. Supp. 2d 556, 568 (D. Md. 2011) (dismissing indictment where Court had "grave doubts as to whether the decision to indict was free from the substantial influence of the improper advice of counsel instruction."); *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (dismissing indictment where the defendants were "seriously prejudiced by the cumulative effect of the government's misleading statements of law and its use of inaccurate hearsay testimony.").

Here, though Mr. Johnson has not reviewed the instructions provided,[5] it is evident that the government provided erroneous legal instructions to the grand jury. This is clear not only from the position the government took in this case, but also from

---

[5] Should the government not provide the requested discovery material, Mr. Johnson will likely move under Federal Rule of Criminal Procedure Rule 6(e)(3)(C)(ii) for *in camera* review of the same.

the language of Count Ten of the Fourth Superseding Indictment, ECF No. 245 at 7, which fails to allege that Mr. Johnson, "impaired the availability or integrity for use in an official proceeding of records, documents, objects or… other things used in the proceeding, or attempted to do so." *Fischer* at 2190.  This omission of an essential element of the crime charged demonstrates that the grand jury was not instructed on this element, and did not make such a finding. Indeed, as discussed above, had the grand jury been advised of this element Mr. Johnson would not have been charged under the obstruction statute as no evidence supported the conclusion that he impaired the availability or integrity of a record, document, "or other things such as witness testimony or intangible information." *Fischer* at 2190.

Here, the grand jury did not indict on a properly-construed violation of § 1512. Clearly, therefore, legally flawed instructions substantially influenced the grand jury's decision to indict on Count Ten, yet another reason to dismiss the obstruction charge in this case.

III.    Conclusion

For all the above stated reasons Mr. Johnson asks this Court to dismiss Count Ten of the Fourth Superseding Indictment.

Dated: July 29, 2024.

Respectfully submitted,


PAUL RUSSELL JOHNSON
By Counsel,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
Todd M. Richman
Assistant Federal Public Defenders
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org
Todd_Richman@fd.org